1        UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,            )
                                         )
6                   Plaintiff,           ) CASE NO.
                                         ) 21-CR-00588
7            vs.                         )
                                         )
8   RAFAEL MAGALLON CASTILLO,            )
                                         )
9                   Defendant.           )
    _____)
10

11

12

13

14      REPORTER'S TRANSCRIPT OF SENTENCING PROCEEDINGS

15            FRIDAY, JUNE 30, 2023

16                  8:02 A.M.

17            LOS ANGELES, CALIFORNIA

18

19

20

21

22   _____

23            MAREA WOOLRICH, CSR 12698, CCRR
          FEDERAL OFFICIAL COURT REPORTER
          350 WEST FIRST STREET, SUITE 4311
24          LOS ANGELES, CALIFORNIA 90012
              mareawoolrich@aol.com
25

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         E. MARTIN ESTRADA
          United States Attorney
5         BY:  BENEDETTO L. BALDING
          Assistant United States Attorney
6         1100 United States Courthouse
          312 North Spring Street
7         Los Angeles, CA 90012

8

9    **FOR THE DEFENDANT:**

10        ALEX MENDOZA & ASSOCIATES
          BY:  ALEX MENDOZA, JR.
11        PO BOX 50472
          IRVINE, CA 92619
12

13
     **ALSO PRESENT:**
14
          JESUS RIVERA, SPANISH INTERPRETER
15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 30, 2023

 2                            8:02 A.M.

 3                             -oOo-

 4

 5              THE COURTROOM DEPUTY:  Calling Item 1, CR 21-588

 6   JFW, United States of America versus Rafael Magallon Castillo.

 7              Counsel, please state your appearance.

 8              MR. BALDING:  Good morning, Your Honor.

 9   Ben Balding for the United States.

10              MR. MENDOZA:  Good morning, Your Honor.

11   Alex Mendoza on behalf of the defendant.  He's present.

12              THE COURT:  All right.  And he is -- needs the

13   assistance of a Spanish interpreter; is that correct?

14              MR. MENDOZA:  Yes, Your Honor.

15              THE COURT:  Would that Spanish interpreter please

16   announce his appearance and confirm that his oath is on file.

17              THE INTERPRETER:  Good morning, Your Honor.

18   Jesus Rivera, Spanish interpreter, oath is on file.

19              THE COURT:  All right.  Good morning to all.

20              This matter is before the Court for pronouncement of

21   judgment and imposition of sentence.  Is there any reason why

22   judgment and sentence should not be imposed at this time?

23              MR. BALDING:  Not from the Government, Your Honor.

24              MR. MENDOZA:  No, Your Honor.

25              THE COURT:  Have you and your client had an
```

1    opportunity to review the presentence reports as well as the

2    addendum that was filed in this case?

3              MR. MENDOZA:  Yes, Your Honor.

4              THE COURT:  Although the United States Sentencing

5    Guidelines are now advisory, the Court must still consider the

6    advisory guideline range in addition to the other directives

7    set forth in 3553(a) and impose a sentence that is sufficient

8    but not greater than necessary to comply with the purposes of

9    the act.

10             As counsel know, this Court follows a two-step or a

11   two-phase sentencing process.  In Phase 1, I will determine or

12   calculate the applicable guideline advisory range which will

13   require the Court to resolve any objections to the presentence

14   report guideline calculations as well as any factual disputes.

15             Thereafter, I will determine whether pursuant to the

16   Sentencing Commission policy statements any departures from the

17   advisory guideline range clearly apply.

18             In this case, in April of 2023, the defendant

19   entered a plea of guilty to Count 1 of the Indictment.  The

20   plea was entered pursuant to a plea agreement that was filed on

21   April 11th of 2023 and appears as Docket No. 259.

22             On May 26th of 2023, the probation officer filed a

23   presentence report and a recommendation letter.  Those appear

24   at Docket Nos. 269 and 270.

25             On June 23rd of this year, the probation officer

1    filed an addendum to the presentence report addressing the

2    two departure arguments made by the defendant.  That document

3    appears as Docket No. 273.

4         The probation officer has made the following

5    advisory guideline calculation which is consistent with

6    paragraph 12 of the plea agreement:

7         The probation officer has concluded that the

8    base offense level for this offense as set forth in

9    paragraphs 32 and 33 of the presentence report is level 26.

10   The probation officer has reduced the base offense level by

11   three levels for the defendant's role in the offense as

12   set forth in paragraphs 36 through 39 of the presentence

13   report.

14        The resulting adjusted offense level is level 23.

15   The defendant has received a further three-level reduction for

16   acceptance of responsibility for a total offense level of 23.

17        The defendant has no criminal history points and is

18   therefore in Criminal History Category I.  And the resulting

19   advisory guideline range is 33 to 41 months as calculated by

20   the probation officer in the presentence report.

21        On June 16th of this year, the Government filed its

22   sentencing position paper which appears as Docket No. 271.  And

23   although not technically a Phase 1 issue, I will address the

24   Government's position.

25        The Government urges or recommends that the Court,

1    consistent with the plea agreement, provide a five-level

2    variance which would result in a total offense level of 15 and

3    a range of 18 to 24 months.

4          The Court has a question, however, for the

5    Government.  And that is with respect to the zero criminal

6    history points as I'm sure counsel are aware that the proposed

7    amendments to the sentencing guidelines, there is a new

8    amendment that has been proposed by the Sentencing Commission.

9    And that is the new Guideline Section 4C1.1 which is entitled

10   Adjustments for Certain Zero Point Offenders.  And this

11   defendant appears to qualify, although that guideline has not

12   been adopted yet.  He does appear to qualify for the two-level

13   reduction -- further two-level reduction in the offense level.

14         So let me hear from Government counsel in terms of

15   the Government's view as to whether or not 4C1.1 applies to

16   this defendant.  I recognize that it's not been effective yet.

17   But in other cases, the Government has agreed that in light of

18   the proposed amendment, the Court could vary under 3553(a) with

19   respect to a proposed amendment that had not been adopted yet.

20         MR. BALDING:  Well, Your Honor, it certainly would

21   be within the Court's discretion to vary whether as part of the

22   Government's recommended five-level variance or to go beyond

23   that for those two levels.  I will say that in this particular

24   case, the five-level variance recommendation was based on -- it

25   was not based on proposed Amendment 4C1.1.  So we believe there

1    are reasons with the defendant's personal, you know,

2    characteristics as we set forth in the sentencing papers and as

3    agreed in the plea that warranted a five-level variance.

4         So I don't want to kind of say that the defendant's

5    not entitled to the benefit of his bargain by saying that

6    encompasses two levels that we had contemplated for 4C1.1 if

7    that makes sense.  In other words, I think, if the Court wants

8    to vary downward by two additional levels, it's certainly

9    within the Court's discretion.  But we are not asking for that

10   here, and I don't think that's baked into the five-level

11   variance request.

12        THE COURT:  No, I understand that.  The five-level

13   variance was probably agreed to before anybody knew that the

14   Sentencing Commission had proposed this amendment.  So it

15   doesn't -- it certainly doesn't affect the Government's

16   obligations under the plea agreement because you are complying

17   with a five-level variance.

18        My point was -- there's actually two questions.

19   Whether or not it applies, and two -- the second one you've

20   answered, and that is that the Government recognizes that I can

21   certainly vary even though it has not yet been adopted.

22        MR. BALDING:  I'd have to look closer, Your Honor,

23   before taking position as to the first as to whether it

24   applies.  It may be that I'm out of practice with sentencing

25   positions compared to some of my newer fresher colleagues.  But

1    if the Court would permit me a moment to read it.

2         THE COURT:  It appears to me it may not

3    apply because the -- do you have it in front of you?

4         MR. BALDING:  If you wouldn't mind me pulling it up.

5    One moment, please.

6         THE COURT:  Because 4C1.1(a)(7), the adjustment only

7    applies if the defendant meets all of the following criteria:

8         In paragraph 7, it states that the defendant did not

9    possess, receive, purchase, transport, transfer, sell or

10   otherwise dispose of a firearm or other dangerous weapon or

11   induce another participant to do so in connection with the

12   offense.

13        MR. BALDING:  Yes, I've got it in front of me now,

14   Your Honor.  Thank you for your patience.

15        THE COURT:  I don't think that really applies

16   because I think they are talking about the use of a firearm in

17   connection with another offense, and this offense is obviously

18   related to the transportation of the prohibited dual-use items.

19        MR. BALDING:  In other words, I think I understand

20   what you are suggesting, which is that, if the underlying

21   offense involves a firearm, then it would have to be something

22   else.

23        I think, you know, the other possible distinction

24   one could draw would be that this was ammunition, not a firearm

25   or other dangerous weapon, and I don't want to mince words, but

1    it does say firearm or other dangerous weapon, and here the

2    transportation was firearms, accessories and ammunition.  So

3    that's another reason the Court could, you know, assume that

4    that does not apply.  Again, I don't want to necessarily take a

5    position for the Government in case --

6           THE COURT:  I'm not asking you to take a firm

7    position or a binding position that -- I just wanted to discuss

8    it with you because I do intend to vary by the two levels, and

9    I wanted to give the Government notice that I intended to do

10   that and have you argue against it if you choose to argue

11   against it.

12          MR. BALDING:  I think it would be a -- if anything,

13   I would leave it to the Court's discretion.  I certainly think

14   if there's another reason to vary downward and the Court feels

15   that's compelling, then that's understandable.

16          THE COURT:  All right.  And I assume defense counsel

17   has no objection to the Court's intention?

18          MR. MENDOZA:  That's true, Your Honor.

19          THE COURT:  Okay.  The Government in connection with

20   their calculation of the advisory guideline range with a

21   five-level variance, the range of 18 to 24 months -- but I was

22   somewhat confused by what the Government's recommendation is.

23   It looked like it was a recommendation of a sentence between 18

24   and 24 months.  Did you make a specific recommendation?

25          MR. BALDING:  I apologize if it wasn't clear.  At

1    least in the conclusion, we did recommend the low end, the

2    18 months which is in accordance with the plea agreement,

3    Your Honor.

4              THE COURT:  Okay.  All right.  The defendant has

5    raised two issues with respect to Phase 1.  And those are

6    issues relating to -- where the defendant has requested a

7    departure based upon Guideline 5K2.20 for aberrant behavior and

8    also a departure for family ties and responsibilities which is

9    Guideline 5H1.6.

10             I'm going to hear argument if counsel has anything

11    he wishes to add to his sentencing position papers with respect

12    to each of those departure requests and any other Phase 1

13    issues that counsel wants to discuss.

14             But in connection with the aberrant behavior

15    departure, I want to confirm with the Government and defense

16    counsel my understanding of the defendant's role in this

17    offense.  He was charged only in the conspiracy which is

18    Count 1.

19             And what I've been able to determine from the papers

20    as well as I went back and looked at the transcript of the

21    status conference that we had in August of 2022, what it

22    appears is that Co-Defendant De Arcos -- and for the

23    court reporter, it's D-e A-r-c-o-s -- was initially involved or

24    was responsible for the transportation of the items -- the

25    prohibited items from the United States to Mexico.  And his

1    involvement as the person involved in the transportation

2    continued until approximately September of 2020 when he was

3    stopped at the border with a load of guns and ammunition.  Is

4    that correct?

5            MR. BALDING:  Yes, Your Honor.

6            THE COURT:  And then Mr. De Arcos was no longer

7    involved in the transportation, and this defendant then became

8    involved as, in effect, a replacement for Mr. De Arcos.  And

9    his involvement involved two events in November of 2020, the

10   first of which was when co-defendant loaded -- Santillan and

11   defendant loaded firearm parts and ammunition into the

12   defendant's trailer at the Whittier residence of Santillan, and

13   the defendant had agreed to transport those items to Mexico.

14           That was on November 5th.  And as defense counsel

15   points out or argues that it was almost a continuous event

16   because on November 6th, the defendant was stopped by the

17   California Highway Patrol with the ammunition and the firearm

18   parts.

19           And I was never able to quite figure out whether or

20   not he was arrested -- or detained, arrested, or what the

21   status was.  Certainly he was -- my memory was that he was

22   detained and then he was released.

23           MR. BALDING:  He was detained for the search,

24   Your Honor.  And they seized all the ammunition and let him go

25   that night.  It was early morning as defense counsel points

1  out.  So the 6th.

2         THE COURT:  All right.  And certainly during the

3  course of his interview with the law enforcement, he did not

4  make any admissions in terms of his knowledge with respect to

5  the ammunition and firearm parts.

6         But then the next event occurs in November,

7  approximately November 18th, and that was set forth in

8  Overt Act No. 45, where the defendant again -- or not again but

9  he's observed at a storage unit with the co-defendant,

10  Santillan, and they load up his trailer with boxes containing

11  ammunition.

12         Although he was observed, the second load was not

13  seized, and the Government has no evidence of the defendant

14  going to Mexico but does have evidence that he returned to

15  Mexico sometime on approximately November 25th.  Is that

16  correct?

17         MR. BALDING:  Yes, Your Honor.

18         THE COURT:  All right.  And I believe -- let me ask

19  Mr. Mendoza.  Based upon your sentencing position paper, that's

20  your understanding of your client's involvement?

21         MR. MENDOZA:  That's correct, Your Honor.

22         THE COURT:  Let me hear with you with respect to the

23  aberrant behavior if you have anything you wish to add to your

24  papers.

25         MR. MENDOZA:  Thank you, Your Honor.  My client with

respect to this case and in comparison to the co-defendant's is just the other end of the spectrum so far as a lifestyle is concerned, so far as a way of living and a way of comporting himself.  He's a family man.

THE COURT:  I don't want to interrupt you, but right now I'm just focusing on the two departure arguments.  And I want to hear from you with respect to the 3553(a) factors, but I do that in Phase 2.

MR. MENDOZA:  Okay.

THE COURT:  Because, quite frankly, I don't think he qualifies for the aberrant behavior departure based on the totality of the circumstances.  But I am going to consider that in Phase 2.

MR. MENDOZA:  Then I'll submit on my papers at this point.

THE COURT:  Okay.  Then based upon the totality of the circumstances and the two different involvements of the defendant, I conclude he's not entitled to a departure based upon aberrant conduct.  It's clear that this was not a one time or single event.  And assuming he did not know what he was transporting on the first occasion, he certainly became aware and agreed to the second delivery on November 25th.  However, as I indicated, I will consider this in Phase 2.

Similarly, with respect to the family ties and responsibilities, the departure request under 5H1.6, I also

conclude that based upon the seriousness of the offense, that

that outweighs the mitigating nature of the defendant's family

circumstances, and I conclude that the departure -- that the

defendant has not met his burden of proof with respect to the

departure.  But I'm certainly going to consider that in

Phase 2.

So is there anything else you want to argue in

Phase 1?

MR. MENDOZA:  No, Your Honor.

THE COURT:  All right.  Then in connection with

Phase 2, after calculating the new advisory guideline range,

the Court must consider or take into account the Congressional

goals of sentencing as set forth in the Sentencing Reform Act

and impose a sentence that is sufficient but not greater than

necessary to reflect the principles stated in 3553(a) and

accomplish the goals or needs of sentencing as set forth in

3553(a)(2).

The Government, as indicated, has recommended a

sentence of 18 months.  The probation officer and the letter of

recommendation has recommended a sentence of 24 months.  And

the defendant requests a sentence of probation and some form of

home detention.

So I'll hear from the Government if you have

anything you wish to add to your papers.

MR. BALDING:  No, nothing at this time, Your Honor.

```
 1              THE COURT:  All right.  Then I'll hear from the
 2     defense, and I'll hear from the defendant if he wishes to
 3     address the Court.
 4              MR. MENDOZA:  Your Honor, given the Court's comments
 5     this morning, I believe that the Court is well aware and has a
 6     good grasp of the case before it and with respect to my client.
 7     So I'll submit on the papers unless you'd like me to address
 8     any particular point.
 9              THE COURT:  No.  I spent a lot of time with this,
10     and it's a difficult -- it is a very difficult case.  Your
11     client obviously made an extremely bad decision to engage in
12     this conduct.  I understand that he is not part of the
13     conspiracy in the sense that he had any involvement in
14     purchasing or the money laundering.  He was, as you
15     characterize him, more of a "mule" in a drug transaction.  But
16     nonetheless, it is a serious offense which I think warrants a
17     period of time in custody.
18              Does your client wish to be heard?
19              MR. MENDOZA:  Yes, Your Honor, briefly.
20              THE COURT:  All right.
21              THE DEFENDANT:  Yes, Your Honor.  Very good morning
22     to you.
23              THE COURT:  Good morning.
24              THE DEFENDANT:  I accept my degree of culpability in
25     this matter and my sincere remorsefulness.  Believe me, I am
```

1    extremely remorseful, and I am here to accept whatever you

2    decide.

3           I just want to be able to take care of my family.

4    To be able to support them financially as well.  And I just ask

5    that you have some consideration that you have some leniency

6    towards me, and I guarantee that this will never happen again

7    in my life.

8           That is all, Your Honor.  Thank you very much.

9           THE COURT:  All right.  Is there any legal reason

10   why sentence should not be imposed?

11          MR. BALDING:  No, Your Honor.

12          MR. MENDOZA:  No, Your Honor.

13          THE COURT:  All right.  In fashioning the sentence

14   to be imposed in this case, I've made an individualized

15   assessment based upon the facts and arguments presented by the

16   parties, and I've considered and applied all of the 3553(a)

17   factors.

18          However, I want to discuss several of those factors.

19   The first is the nature and circumstances of the offense which

20   is captured by the factual basis for the defendant's plea of

21   guilty in paragraph 10 of the plea agreement and the offense

22   conduct section of the presentence report at paragraphs 15

23   through 19 and specifically, the defendant's conduct described

24   in paragraphs 20 through 22 which I incorporate as part of my

25   analysis of this factor.

1          Beginning no later than March of 2020 and continuing

2    until February of 2021, the defendant and his co-defendants

3    conspired to export from the United States to Mexico items

4    controlled by the Export Administration Regulations and

5    identified on the commercial control list, which are referred

6    to as dual-use items, without first having obtained a license

7    or authorization from the Department of Commerce to do so, to

8    purchase said dual-use items with money from drug proceeds

9    provided by a Mexican-based drug cartel.

10         The Government -- the conspiracy was accomplished by

11   the defendants agreeing to obtain those dual-use items and

12   similar goods in the United States, and they were to be

13   transported to Mexico to members of the cartel using funds in

14   the United States that have been provided by the

15   co-conspirators in Mexico.  The defendants in this case would

16   purchase dual-use items and similar goods to be transported to

17   Mexico.

18         The defendant did not have any involvement in the --

19   as I indicated, in the obtaining of these dual-use items, but

20   he did have involvement in the transportation of those items.

21   And the defendant's involvement was limited to the two events

22   that occurred November 5th and 6th and the one on

23   November 18th.  And I discussed the specifics of those events

24   and the ruling on the departure for aberrant behavior, and I

25   incorporate my comments as part of my analysis of this factor.

1            Notwithstanding the defendant's limited role, this

2    is a serious offense which, in my view, requires a prison

3    sentence.

4            The history and characteristics of the defendant is

5    captured by the defendant's sentencing papers and the

6    presentence report at paragraphs 55 through 78 which I

7    incorporate as part of my analysis of this factor.

8            As counsel for the defendant persuasively argues and

9    points out, the defendant came to the United States in search

10   of a better life for himself and his family.  He moved here as

11   an adult and became a legal permanent resident.

12           Defendant and his wife who is a U.S. citizen have

13   been together for some 16 years, and they have three children,

14   all born in the United States.  And I assume that the people

15   who are present in the courtroom are defendant's family

16   members.

17           Upon his arrival, the defendant worked at a

18   meat department in a grocery store to provide for his family.

19   He's been the sole support for his family.  The defendant

20   eventually began his own business transporting clothes,

21   furniture, and other items to Mexico.  He started small,

22   charging a small fee to transport personal goods to Mexico.

23   Over time, his business grew, and it became his full-time

24   occupation.

25           As indicated this morning, the defendant feels

immense regret and remorse for the bad decisions that have brought him before the Court.  When the prosecutors filed this case, it led to news coverage both in Los Angeles and in Mexico.

And to his credit, when the defendant saw his picture on the news, he promptly called the number provided by the FBI and surrendered to the authorities.

Defendant will likely be deported as a result of his guilty plea, and unfortunately the life he has built for his family may come to an end as a result of this conviction.  I agree with counsel that it's difficult to imagine a more severe consequence than being deported from a country that has been your home, particularly when your wife and family live in and will continue to live in that country.

As to medical issues, the defendant has no medical issues.  As to mental and emotional issues, the Probation Office in the report indicates that the defendant has none.

Defendant also has no substance abuse issues.

Defendant has a strong record of employment as described in the presentence report, paragraphs 87 to 90.

As to education, the defendant is very well educated including taking a law course in September to December of 2003.

Defendant obviously has the love and support of his family and friends as seen from the many character letters

provided by the defendant.  Those letters describe the

defendant as an honest, caring, loving, respectful,

responsible, hardworking, moral, generous, compassionate,

sincere and committed to his family and to his faith.

The letters provide specific examples of the

defendant's specific acts which are set forth in paragraphs 75A

through D of the presentence report.

As I stated, the defendant is in Criminal History

Category I and has zero criminal history points.

The defendant has accepted responsibility by

entering a plea of guilty which I consider to be a very

important sentencing factor.

The Court has also considered and taken into account

the advisory guidelines range.  The Court finds that the

advisory guideline range does not adequately take into

consideration the specific facts and circumstances of this

case.  And the range established by the guidelines is greater

than necessary to satisfy the purposes of sentencing under

3553(a)(2).

The Court also has considered any unwarranted

sentencing disparity.  I have sentenced several defendants in

this case prior to today, and Mr. De Arcos's sentencing is set

for the next -- within the next couple of months.

I did consider this factor, and I concluded to the

extent any disparity exists, it's not unwarranted, and it's

1    fully justified by the unique circumstances of this case.

2            And finally, in fashioning the sentence in this

3    case, I've considered the goals or purposes of sentencing, and

4    I conclude that the Court's sentence is sufficient but not

5    greater than necessary to meet the four purposes of setting as

6    set forth in 3553(a)(2).

7            So for all of the foregoing reasons, the Court

8    imposes the following sentence:

9            It is ordered that the defendant shall pay to the

10    United States a special assessment of $100 which is due

11    immediately.  Any unpaid balance shall be due during the period

12    of imprisonment at the rate of not less than $25 per quarter

13    and pursuant to the Bureau of Prisons Inmate Financial

14    Responsibility Program.

15            Pursuant to Guideline Section 5E1.2(a), all fines

16    are waived as the court finds that the defendant has

17    established he's unable to pay and not likely to become likely

18    to pay any fine.

19            The probation officer had recommended the

20    incorporation of a preliminary order of forfeiture, but the

21    Government has confirmed that no such order exists; correct?

22            MR. BALDING:  Yes, Your Honor.

23            THE COURT:  Pursuant to the Sentencing Reform Act of

24    1984, it's the judgment of the Court that the defendant is

25    hereby committed on Count 1 of the Indictment to the custody of

1   the Bureau of Prisons for a term of six months.

2           Upon release from imprisonment, the defendant shall

3   be placed on supervised release for a term of three years under

4   the following terms and conditions.

5           1.  The defendant shall comply with the rules and

6   regulations of the U.S. Probation Office and U.S. Pretrial

7   Service Office and Second Amended General Order 20-04.

8           2.  The defendant shall not commit any violation of

9   local, state or federal law or ordinance.

10          3.  The defendant shall cooperate in the collection

11  of a DNA sample from the defendant.

12          4.  During the period of community supervision, the

13  defendant shall pay the special assessment in accordance with

14  this judgment's orders pertaining to such payment.

15          5.  The defendant shall submit the defendant's

16  person, property, house, residence, vehicle, papers and other

17  areas under the defendant's control to a search conducted by

18  the U.S. Probation Office or law enforcement officer.  Failure

19  to submit to a search may be grounds for revocation.  Any

20  search pursuant to this condition will be conducted at a

21  reasonable time and in a reasonable manner upon reasonable

22  suspicion that the defendant has violated a condition of his

23  supervision and that the areas to be searched contain evidence

24  of this violation.

25          6.  The defendant shall comply with the immigration

1  rules and regulations of the United States.  And if deported

2  from this country, either voluntarily or involuntarily, not

3  return to the United States illegally.  The defendant is not

4  required to report to the Probation and Pretrial Services

5  Office while residing outside of the United States.  However,

6  within 72 hours of release from any custody or any re-entry to

7  the United States during the period of court ordered

8  supervision, the defendant shall report for instructions to the

9  U.S. Probation Office located at 300 North Los Angeles Street.

10            The drug testing condition mandated by statute is

11  suspended based upon the Court's determination that the

12  defendant poses a low risk of substance abuse.

13            Are there any counts that need to be dismissed?

14            MR. BALDING:  No, not as to this defendant,

15  Your Honor.

16            THE COURT:  All right.  I will allow the defendant

17  to self-surrender.

18            Counsel, do you have a date in mind for

19  self-surrender?

20            MR. MENDOZA:  If the Court would allow September 1?

21            THE COURT:  September 1?

22            MR. MENDOZA:  Yes, Your Honor.

23            THE COURT:  All right.  Does the Government have any

24  objection to that date?

25            MR. BALDING:  No, Your Honor.

1          THE COURT:  It is further ordered the defendant

2    shall surrender himself to the institution designated by the

3    Bureau of Prisons at or before 12:00 noon on September 1st of

4    2023.  In the absence of such designation, the defendant shall

5    report on or before the same date and time to the U.S. Marshal

6    located at First Street Courthouse.  The defendant's bond will

7    be exonerated upon his self-surrender.

8          I want to advise the defendant that under your plea

9    agreement with the Government, you might have waived most of

10   your right to appeal this sentence, and your plea agreement

11   will govern this issue.  However, if you retain the right to

12   appeal and you wish to appeal this sentence, you must file a

13   notice of appeal within 14 days of today, or you will lose your

14   right to an appeal.  If you are unable to afford an attorney

15   for your appeal, one may be appointed at no cost to you.

16         Do you want me to make a recommendation in terms of

17   a location for the service of his sentence?

18         MR. MENDOZA:  Yes, Your Honor, as close to this

19   district as possible.

20         THE COURT:  All right.  And I'll make a

21   recommendation that the Bureau of Prisons designate

22   a Southern California facility.

23         All right.  Anything else from the Government?

24         MR. BALDING:  No.  Thank you, Your Honor.

25         THE COURT:  Anything else from the defense?

**UNITED STATES DISTRICT COURT**

1          MR. MENDOZA:  No.  Thank you very much, Your Honor.

2          THE COURT:  All right.  We will be in recess.

3          (At 8:40 a.m. the proceedings adjourned.)

1        **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7    FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8    THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9    THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12   IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13   CONFERENCE OF THE UNITED STATES.

14

15

16               DATED THIS  1ST  DAY OF APRIL, 2024.

17

18

19               /S/ MAREA WOOLRICH

20               _____
                 MAREA WOOLRICH, CSR NO. 12698, CCRR
21               FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

**UNITED STATES DISTRICT COURT**